IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NEW LEAF SERVICE CONTRACTS, INC. f/k/a NEW LEAF SERVICE CONTRACTS, LLC | § | |
| *Plaintiff,* | § | |
| v. | § | CIVIL ACTION NO. 3:25-cv-01977-G |
| LLOYD'S AMERICA, INC., | § | |
| *Defendant.* | § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff New Leaf Service Contracts, Inc. f/k/a New Leaf Service Contracts, LLC ("***Plaintiff***" or "***New Leaf***"), files this First Amended Complaint against Defendant Lloyd's America, Inc. ("***Lloyd's***"). This case involves a dispute over insurance coverage for settlement payments and defense costs New Leaf incurred in connection with an underlying arbitration proceeding. New Leaf would respectfully show the Court as follows:

## I. JURISDICTION & VENUE

1. This Court has jurisdiction under 28 U.S.C. § 1332(a) because (1) New Leaf and Lloyd's are not citizens of the same state; and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs.

2. New Leaf is incorporated in Delaware and has its principal place of business in Irving, Texas.

3. Upon information and belief, Lloyd's America, Inc. is a collection of insurers doing business in Texas, organized in London, England, with its principal place of business at 280 Park Avenue, East Tower, 5th Floor, New York, NY 10017. Lloyd's may be served through its agent, Lloyd's America, Inc., c/o CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201.

4. Lloyd's is engaged in the business of insurance in the State of Texas. Lloyd's issued the insurance policy at issue in this lawsuit (described below) to New Leaf in Irving, Texas, and Lloyd's committed the below-described breaches and violations of the Texas Insurance Code in Irving, Texas, having sent its correspondence and repudiating its obligations to New Leaf in Texas.

5. Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391(b) because, as explained in the facts below, it is the district in which a substantial part of the events or omissions giving rise to the claim occurred.

## II. FACTUAL BACKGROUND

### A. New Leaf's Service Contract Business

6. New Leaf is a third-party service contract administrator that works with independent and regional retailers across the United States to offer extended warranty contracts to its customers. New Leaf provides, implements, and administers those extended warranty contracts.

7. The program works generally as follows: New Leaf works together with retail partners to offer extended warranty contracts to customers. Then, if a customer experiences an issue with their appliance under warranty, they contact New Leaf for service. New Leaf calls a repair technician and pays the technician.

8. New Leaf partnered with 4Warrranty Corporation ("***Fortegra***") to be the underwriter and obligor of the program through an Administrative Services Agreement (the "***Fortegra Agreement***"). Under the Fortegra Agreement, for each warranty sold, New Leaf kept

its administration fee and remitted the rest of the funds to Fortegra. Fortegra took its fee and held the remaining funds in reserve to be used to pay consumer warranty claims.

9. In simple terms, if there were more warranty agreements sold than consumer claims made, the program was profitable. If not, then the program was running at a loss. Pursuant to the Fortegra Agreement's "Profit Share" provision, New Leaf and Fortegra would share in the profits and losses[1] that the program incurred.

10. The program was not profitable, and in late 2021, Fortegra advised New Leaf that it would owe millions of dollars due to the program's projected losses.

**B. The Fortegra Arbitration**

11. On March 22, 2023, New Leaf initiated an arbitration against Fortegra (the "***Arbitration***") for breach of contract (i.e., the Fortegra Agreement) for failing to timely reimburse claim payments and denying reimbursements without cause. New Leaf also sought declaratory relief defining the parties' obligations under the Fortegra Agreement.

12. On December 1, 2023, Fortegra asserted counterclaims against New Leaf for (1) breach of contract for allegedly paying and seeking reimbursement for uncovered claims, (2) negligence for improperly administering claims, and (3) declaratory relief with respect to the parties' obligations under the Agreement (the "***Counterclaims***"). Fortegra specifically sought declarations that (1) it was not responsible for reimbursing New Leaf for uncovered claims under the Fortegra Agreement, and (2) New Leaf was obligated to pay Fortegra all monies owed under

[1] When they entered into the Fortegra Agreement, New Leaf was operating under the belief and understanding that the Profit Share agreement was an agreement to share in profits only, and that any losses would be borne by Fortegra, since Fortegra held the sole authority to adjust pricing to ensure the program's profitability. But, as discussed further below, an arbitration panel ultimately concluded that the terms of the Fortegra Agreement require New Leaf and Fortegra to share in both profits and losses.

the profit-and-loss-sharing agreement, in which New Leaf was entitled to 60% of both the profits and losses under the program.

13. In its scheduling order, the arbitration panel bifurcated the proceedings in order to determine the construction and meaning of the profit-sharing agreement as a preliminary matter.

14. Following the parties' summary judgment briefing on this issue, on May 15, 2024, the arbitration panel issued an order determining that New Leaf was entitled to 60% of the profits and responsible for 60% of the program's losses under the profit-and-loss-sharing agreement. The panel reserved the remaining issues and calculation of the total losses for a later merits hearing.

### C. New Leaf tendered the Claim to Lloyd's, and Lloyd's wrongfully delayed and denied coverage despite the Policy's express terms.

15. New Leaf purchased professional liability insurance policy number HMPL23-0252 (the "***Policy***") from Lloyd's that covers New Leaf as a third-party administrator of extended warranties for the period from October 10, 2023 to October 10, 2024.

16. Lloyd's issued the Policy to insure New Leaf against "all sums" it "becomes legally obligated to pay as damages and claim expenses as a result of a claim first made against [New Leaf] by reason of an act or omission . . . in the performance of professional services[.]"

17. The "professional services" Lloyd's insures are as "Third Party Administrator only of extended warranties [sic] programs of Consumer Electronics and Automotive Parts."

18. Further, the Policy provides that Lloyd's has the "duty to defend any claim against [New Leaf] even if any of the allegations of the claim are groundless, false, or fraudulent."

19. The Policy defines a Claim as "a written demand for money or services naming the Insured arising out of an act or omission in the performance of professional services. A claim includes the service of suit or the institution of an arbitration proceeding against the Insured."

20. The Policy excludes coverage for a claim arising out of the liability of others assumed by the Insured under any contract or agreement, however, it expressly preserves coverage for liability that would have attached to an insured even in the absence of such a contract — *i.e.*, New Leaf's own liability.

21. Additionally, the Policy excludes coverage for liability arising out of the gaining of any personal profit or advantage to which the insured is not legally entitled.

22. Given that the Counterclaims sought to hold New Leaf liable for its own alleged conduct and obligations, New Leaf timely submitted its claim for coverage to Lloyd's for the Counterclaims (the "***Claim***"). This included costs it incurred in defending against the Counterclaims.

23. After receiving notice of New Leaf's claim, Lloyd's initially denied coverage for the claim under the contractual liability exclusion and the ill-gotten gains exclusion. It then issued further correspondence to New Leaf, but neither confirmed nor denied its duty to defend, even after it had all information requested. Lloyd's failed within a reasonable time to affirm or deny coverage of a claim to New Leaf in violation of Texas Insurance Code § 541.060(a)(4).

24. Only after counsel became involved did Lloyd's belatedly acknowledge its duty to defend. Even then, Lloyd's significantly delayed reimbursing New Leaf its defense costs for over five months and refused to pay the full amounts owed.

25. Despite being provided all defense bills and information necessary to pay New Leaf's defense costs, Lloyd's delayed payment for over five months. In this respect, Lloyd's failed to attempt in good faith to effectuate a prompt, fair and equitable settlement of a claim under which Lloyd's responsibility was clear in violation of Texas Ins. Code § 541.060(a)(2).

**D. New Leaf and Fortegra settle their claims, and Lloyd's duty to indemnify New Leaf ripens.**

26. After the arbitration panel entered its binding order finding New Leaf liable for losses under the program, New Leaf and Fortegra entered into a settlement agreement and release (with no objection from Lloyd's) for a confidential sum representing the amount of New Leaf's exposure for the program's anticipated losses, in exchange for Fortegra's release of the Counterclaims on May 6, 2025 (the "***Fortegra Settlement***").

27. The Fortegra Settlement is covered by the Policy. Nevertheless, Lloyd's refused to fund the settlement.

28. This time, instead of relying on the ill-gotten gains exclusion, Lloyd's shifted its approach and concluded that—despite its acknowledgment of its duty to defend which is itself triggered by New Leaf's alleged acts or omissions in the performance of its professional services[2]—that the Fortegra Settlement did not constitute damages "by reason of an act or omission . . . in the performance of professional services by [New Leaf]."

29. Lloyd's position is without merit, particularly since it already acknowledged, through its belated agreement to defend, that the Counterclaims against New Leaf alleged acts or omissions in the performance of New Leaf's professional services. Specifically, Fortegra alleged that the reason the program was running at a loss was due to "New Leaf paying uncovered claims [under the Fortegra Agreement] and then seeking reimbursement from Fortegra for such uncovered claims, and failing to manage the cost associated with covered claims." (Fortegra Counterclaim, at ¶ 20). The basis for New Leaf's settlement with Fortegra was New Leaf's role as a third-party administrator of extended warranties (its covered "Professional Service" under

[2] Lloyd's had a duty to defend New Leaf for "Claims" against it, defined as a written demand for money or services naming [New Leaf] arising out of an act or omission in the performance of Professional Services."

the Policy). As such, the settlement triggered the insuring agreement and Lloyd's had no reasonable basis in the Policy to conclude otherwise.

30. By asserting a clearly inapplicable policy argument as its basis for nonpayment, Lloyd's both misrepresented the Policy to New Leaf and failed to promptly provide to New Leaf a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for its denial of New Leaf's claim.

31. Lloyd's also relied on an exclusion which excludes claims "based on or arising out of liability of others assumed by the Insured under any contract or agreement, unless such liability would have attached to the Insured even in the absence of such contract or agreement." (the "***Indemnity Exclusion***" (emphasis added)).

32. The Indemnity Exclusion is inapplicable here because this type of exclusion only precludes coverage for an insured's assumption of the liability of *others* under a contract, not for the Insured's own liability. The Counterclaims allege conduct committed only by New Leaf and New Leaf's liability as a partner in the profits and losses of the program with Fortegra. It is not Fortegra's indemnitor.

33. Lloyd's also asserted that the damages owed under the arbitration award did not trigger the insuring agreement under the Policy because they were not damages "by reason of an act or omission . . . in the performance of professional services" by New Leaf.

34. Yet Lloyd's own defense of the claims undermines this assertion that coverage has not been triggered under the Policy. Moreover, for the reasons explained above, the amounts owed under the Fortegra Settlement directly relate to the allegations against New Leaf based on its performance as a third-party administrator of service contracts (its professional service). Thus,

the settlement amount is damages owed by reason of the acts or omissions in the performance of New leaf's professional services.

35. Under the Policy, Lloyd's is therefore obligated to reimburse New Leaf for the settlement amount, up to the remaining limits of the Policy. Lloyd's, however, continues to deny coverage, refusing to indemnify New Leaf for the settlement and significantly delaying its payment of defense costs, necessitating this lawsuit.

## III. CAUSES OF ACTION

### A. Breach of Contract

36. The foregoing allegations are incorporated herein by reference.

37. The Policy is a valid and enforceable contract.

38. New Leaf is an insured under the Policy.

39. New Leaf has satisfied all conditions precedent to coverage under the Policy, or those conditions have been waived.

40. The Policy insures New Leaf against "all sums" it "becomes legally obligated to pay as damages and claim expenses as a result of a claim first made against [New Leaf] by reason of an act or omission in the performance of professional services."

41. Lloyd's also has the duty to defend any claim against New Leaf under the Policy, even if any of the allegations are groundless, false, or fraudulent.

42. Under the Policy, a Claim is any "written demand for money or services naming the Insured arising out of an act or omission in the performance of professional services. A claim includes the service of suit or the institution of an arbitration proceeding against the Insured."

43. Fortegra's Counterclaim against New Leaf is a covered Claim under the Policy.

44. Lloyd's is obligated to indemnify New Leaf under the Policy for the above-described settlement of the Counterclaim and to reimburse New Leaf for all fees and costs it incurred in defense of the claims made against it.

45. Alternatively, the Policy's terms are ambiguous and must be interpreted in favor of coverage.

46. Lloyd's breached its contract with New Leaf (i.e., the Policy) by, among other things, denying its coverage obligations to New Leaf under the Policy for the Fortegra Settlement and failing to fully pay all defense costs owed.

47. As a result of the breach by Lloyd's, New Leaf has sustained substantial damages in the form of its uncompensated, covered losses and unreimbursed defense costs.

**B. Declaratory Judgment**

48. The foregoing allegations are incorporated herein by reference.

49. An actual, justiciable controversy exists between New Leaf and Lloyd's regarding Lloyd's' obligation to pay the Fortegra Settlement on New Leaf's behalf as a covered Loss under the Policy.

50. Pursuant to 28 U.S.C. § 2201, New Leaf seeks a declaration that Lloyd's has an obligation to fund the Fortegra Settlement as covered Loss under the Policy.

**C. Breach of the Duty of Good Faith and Fair Dealing**

51. The foregoing allegations are incorporated herein by reference.

52. As New Leaf's insurer, Lloyd's owes New Leaf a duty of good faith and fair dealing in connection with the handling of New Leaf's claims under the Policy.

53. Lloyd's has violated its duty of good faith and fair dealing by refusing to provide coverage without a reasonable basis, including by articulating demonstrably meritless coverage defenses in light of the express terms of the Policy.

54. Lloyd's' breach of its duty of good faith and fair dealing has caused New Leaf to suffer considerable actual damages.

55. Given the fact Lloyd's has continued to withhold coverage despite having been made aware of the requirements of Texas law and the Policy, which support coverage under the Policy, Lloyd's' denial was clearly malicious, fraudulent, and/or grossly negligent.

56. In addition, Lloyd's has engaged in senseless dilatory tactics, including delaying defense costs payments for five months, despite acknowledging amounts owed.

57. This justifies the imposition of punitive and exemplary damages, in addition to New Leaf's compensatory damages.

**D. Violation of the Texas Insurance Code's prompt payment statute**

55. The foregoing allegations are incorporated herein by reference.

56. Chapter 542, Section 542.058 of the Texas Insurance Code requires insurers to make prompt payment of claims.

57. Section 542.060 imposes an 18% per annum statutory penalty upon any insurer that breaches its statutory duty to make prompt payment of claims. No showing of bad faith or ill intent is required.

58. New Leaf made a claim under the Policy for a defense against the Counterclaims and has satisfied all conditions under the Policy.

59. Lloyd's has engaged in conduct that violates Chapter 542 by delaying their defense payments despite acknowledging its duty to defend and refusing to fund the Fortegra Settlement.

60. New Leaf therefore seeks to recover the maximum statutory penalty available under Chapter 542 of the Texas Insurance Code for delayed payment of claims.

**E. Attorneys' Fees**

61. The foregoing allegations are incorporated herein by reference.

62. Due to the actions of Lloyd's, New Leaf has been required to retain the services of the law firm of Haynes and Boone, L.L.P. New Leaf has agreed to pay Haynes and Boone, L.L.P. a reasonable fee for its services necessarily rendered and to be rendered in this action. Pursuant to § 38.001 of the Texas Civil Practices & Remedies Code and Chapters 541 and 542 of the Texas Insurance Code, New Leaf is entitled to an award of reasonable attorneys' fees against Lloyd's in an amount to be established at trial.

**F. Notice of Intent to Pursue a Claim under Chapter 541 of the Texas Insurance Code.**

63. The foregoing allegations are incorporated herein by reference.

64. Pursuant to Section 541.154 of the Texas Insurance Code, New Leaf provided notice of its intent to pursue a claim against Lloyd's under Section 541 of the Texas Insurance Code on or about July 30, 2025. New Leaf intends to amend this suit after 60 days of this notice to assert claims under Chapter 541.

65. As described herein, Lloyd's has engaged in unfair or deceptive acts or practices as defined by Section 541.060 of the Texas Insurance Code.

66. Lloyd's has violated Chapter 541 of the Texas Insurance Code by, among other things (1) misrepresenting to New Leaf material facts or policy provisions related to the coverage at issue, (2) failing within a reasonable time to affirm or deny coverage, (3) failing to attempt in good faith to effectuate a prompt, fair and equitable settlement of a claim for which Lloyd's responsibility was clear, and (4) failing to promptly provide to New Leaf a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for Lloyd's' denial of its claim.

67. Lloyd's knowingly and intentionally delayed payment of defense costs, despite recognizing it owed a duty to defend and even acknowledging amounts owed in violation of Section 541.060(a)(2) and (a)(4).

68. Lloyds also cited Policy provisions as a basis for denial that it knew were inapplicable and inconsistent with its prior actions, in violation of Section 541.060(a)(1) and (a)(3).

69. As a result of Lloyd's' violation of Chapter 541 of the Texas Insurance Code, New Leaf has sustained substantial damages, including the delay and denial of covered benefits and payments due under the Policy.

70. For these same reasons, it is also clear Lloyd's' violations were committed knowingly, warranting an award of up to three times New Leaf's actual damages.

## IV. JURY DEMAND

71. Plaintiff hereby requests a jury trial pursuant to Fed. R. Civ. P. 38.

## PRAYER

WHEREFORE, Plaintiff respectfully requests that this Court grant it the following relief:

A. Judgment awarding New Leaf all damages caused by Lloyd's' breach of contract;

B. Judgment awarding New Leaf all damages caused by Lloyd's' violations of Chapter 541 of the Texas Insurance Code, including treble damages for Lloyd's' knowing violations of such statute;

C. Judgment awarding New Leaf damages, including punitive damages, for Lloyd's' breach of their duty to good faith and fair dealing;

D. Judgment awarding New Leaf all reasonable and necessary attorneys' fees and expenses incurred in this matter under Chapter 38 of the Texas Civil Practice & Remedies Code as well as Chapters 541 and 542 of the Texas Insurance Code;

E. Judgment awarding New Leaf pre-judgment and post-judgment interest in the maximum amount allowed by law, including under Chapter 542.060 of the Texas Insurance Code;

F. Judgment awarding New Leaf all costs of court; and

G. A declaration that Lloyd's has an obligation to fund New Leaf's settlement with Fortegra pursuant to the Fortegra Settlement as covered Loss under the Policy; and

H. Such other and further relief to which New Leaf may be justly entitled.

Respectfully submitted,

*/s/ Natalie DuBose*

Natalie DuBose
Texas State Bar No. 24077481
Courtney A. Jones
Texas State Bar No. 24124067
HAYNES & BOONE, LLP
2801 N. Harwood Street, Suite 2300
Dallas, Texas 75201
natalie.dubose@haynesboone.com
courtney.jones@haynesboone.com
Telephone: (214) 651-5313
Telephone: (214) 651-5143

**ATTORNEYS FOR PLAINTIFF,**
**NEW LEAF SERVICE CONTRACTS, INC. f/k/a**
**NEW LEAF SERVICE CONTRACTS, LLC**